Edward Thompson, J.
This is a motion to suppress the defendant’s inculpatory statements. Together with one Javier Sanchez, he was indicted for the murder of John T. Conway, Sanchez ’ employer, on July 3,1963.
After trial, Sanchez was convicted of murder in the first degree and the defendant Leon was convicted of murder in the second degree, inculpatory statements having been admitted against both defendants on the trial. By virtue of the trial court’s failure to exclude said inculpatory statements made in the absence of counsel, this after retained counsel had advised the police that he wished to see and speak to Sanchez and that he did not want Sanchez interrogated, the Court of Appeals reversed the conviction and ordered a new trial. (People v. Sanchez, 15 N Y 2d 387.) Inasmuch as the District Attorney had no evidence other than the inculpatory statements made by the defendant, the indictment was dismissed on consent of the District Attorney. (Shapiro, J., May 20,1965.)
Since the defendant Leon was convicted of murder in the second degree, an appeal was taken to the Appellate Division of this court, and by memorandum decision (People v. Leon, 28 A D 2d 912) said conviction was reversed on the ground that an alternate juror was unduly substituted after deliberation had begun, and for the trial court’s consideration of the propriety of the inclusion of inculpatory statements made by this defendant. A full hearing on the circumstances surrounding the taking of the statement and the issues of fact with respect thereto was directed.
After such decision the defendant, Leon, moved to dismiss the indictment against him, this on the further consent of the District Attorney. But this court (Shapiro, J.) by memorandum *385 decision (N. Y. L. J., Nov. 14, 1967, p. 19, col. 1), aware of the District Attorney’s position on appeal that the defendant had knowingly and willingly waived his right to counsel when interrogated, opined that a full inquiry be held for decision on the issue of waiver. For purposes of this decision, it is conceded that any retrial herein must satisfy the Miranda v. Arizona (384 U. S. 436) requirements (Johnson v. New Jersey, 384 U. S. 719; People v. McQueen, 18 N Y 2d 337), retroactivity not being in issue. It is here to be determined whether the conduct of this defendant before, at or during his interrogation was such as to amount to a waiver under Miranda principles. Succinctly speaking, the facts are as follows:
On July 3, 1963, the day of the homicide, the defendant was taken into custody for interrogation and investigation and after some 30 hours he was arrested for vagrancy. During this period he made no inculpatory statements. Some 10 hours thereafter, on the sidewalk outside the Queens Prison, Sanchez and his attorney spoke with the defendant, Leon, for whom they had just posted bail on the vagrancy charge. It is significant here to note that the defendant who was a resident of New York County was arrested for vagrancy in Queens County, this after being interrogated for the aforesaid 40 hours concerning the homicide. Leon was released on bail and while walking away from the prison was told by Sanchez’ counsel he did not have to say anything if interrogated further and that he, the counsel, volunteered to be with him when Leon was interrogated if he so desired. Upon completing said remark, a man who identified himself as a parole officer took the defendant into custody on a valid parole warrant. The police took custody of the defendant again on July 8, 1963, from 1:30 p.m. to 4:00 p.m. and during this time the defendant made inculpatory statements to the police and to the District Attorney. A scrupulous scrutiny of the trial record reveals that no Miranda warnings were given by any law enforcement authority. Further, in the middle of the statement by the defendant to the District Attorney, he interrupted the same by asking to speak to his lawyer. It is also true that the defendant was told that he could see his wife and family and a lawyer, this because he refused to answer more incriminating questions of the District Attorney. The defendant replied that he wished to speak with his wife and family, which permission was granted, and that thereafter he would not need a lawyer. Subsequent to this, more inculpatory statements were given by the defendant. These statements obviously were made after defendant had been continuously in police custody and subjected to questioning for more than five days, except for one *386 period of liberty not exceeding 30 minutes in the afternoon of July 5,1963.
Assuming but not conceding that the warning given defendant by codefendant’s counsel was wholesome and true, and disregarding entirely any consideration of the alleged unlawful detention in this county upon a baseless charge of vagrancy, I am called upon to decide whether (1) such advice of constitutional privileges need be given by law enforcement authorities, and, if such is not a constitutional requirement, (2) whether the facts herein constitute a waiver of the Miranda requirements.
(1) In the posture of due process regarding advice to those in custody .concerning constitutional privileges against self incrimination, there is no authority for relieving law enforcement authorities from the burden of full advice to suspects, this short of completely spontaneous, voluntary admissions and then only while the matter is in an investigatory stage. (People v. Torres, 21 N Y 2d 49.) In fact and law the responsibility has been solely, unalterably, irrefutably and inexorably fixed upon law enforcement authority. (Miranda, supra.) The clear mandate asserted therein (pp. 468-469) is unequivocal: “ The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clear-cut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time.”
There can be no question that Leon was not only in custody but was one of the prime suspects at all the times of his interrogation. All manners and means of detention, both lawful and unlawful, were imposed upon him to keep him in custody, and the failure of the police to warn of constitutional privileges against self incrimination under these circumstances renders the taking of any statements impermissible. Too, it is unquestioned that neither spontaneity nor voluntariness, as a matter of law and fact, triggered the defendant’s statements. Were the defendant an attorney or professor of constitutional law he would have to be so advised by the police once he is submitted to custodial interrogation. Of this there can be no exception even *387 though, as in this case, an admitted slayer may go free. Consequently, I conclude that advice of constitutional privileges against self incrimination must be given by law enforcement authorities preceding any in-custody interrogation.
(2) Concerning waiver of constitutional rights, it is now well settled that the court must take a careful view of any alleged waiver of right to counsel. (Escobedo v. Illinois, 378 U. S. 478.) With knowledge that a defendant has or requests counsel, any inculpatory statement becomes impermissible in the absence of such counsel. (People v. Vella, 21 N Y 2d 249; People v. Donovan, 13 N Y 2d 148.)
And, says Miranda (pp. 470-471): “ An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given. The accused who does not know his rights and therefore does not make a request may be the person who most needs counsel.”
Since the defendant, Leon, was not so informed by the law enforcement authorities, it can never be concluded that he waived his right to counsel. During interrogation, who could conceivably contend that the defendant did not need an attorney at this stage of the proceedings? In fact and law he needed one no end.
If it were true that the defendant was properly advised, the facts do reveal that his conduct could well be constituted a waiver. He was informed of his rights to counsel by codefendant’s counsel though not defendant’s counsel. Even though the interests of the defendants were entirely inconsistent and the police had informed Leon that Sanchez blamed him for the killing, the defendant’s subsequent conduct is in substance a waiver of counsel. Any defendant assuredly may waive his right to counsel under these circumstances. (People v. Bodie, 16 N Y 2d 275, 280.)
The question of whether the Miranda doctrine is applicable to retrials held after June 13,1966, the cut-off date, is yet unsettled by a court of last resort in this State. By a 3-to-2 decision the Third Department in People v. Sayers (28 A D 2d 227 [1967]) decreed that such apply, this over two vigorous dissenting opinions. I am reliably informed that the Sayers case and one other are now before the Court of Appeals on that very point. New Jersey holds Miranda inapplicable to retrials (State v. Vigliano, 1 Or. L. 2217, 36 Law Wk. 2080, Sup. Ct. of N. J., July 7, 1967) *388 as does Pennsylvania in Commonwealth v. Brady (1 Or. L. 2304; Sup. Ct. of Pa., July 17,1967), but California holds them applicable. (People v. Doherty, 1 Cr. L. 2217, 36 Law Wk. 2079; Cal. Sup. Ct., July 10,1967.)
With this latter I agree and, subject to finality in the Court of Appeals of this State, I hold Miranda to be applicable to retrials, and grant leave to the District Attorney to reargue should the Court of Appeals hold otherwise.
Motion granted subject to'afore-mentioned conditions.